FILED
FEBRUARY 8, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

KMART CORPORATION, )
)
              Plaintiff, )
)
v. )    Case No._____
)
INTERNATIONAL HOME FASHIONS, )
INC., )    **08 C 866**
)
              Defendant. )    JUDGE DOW
)    MAGISTRATE JUDGE COL
)

## COMPLAINT

Plaintiff, Kmart Corporation ("Kmart"), by and through its counsel, Mark E. Enright and Jason B. Hirsh (Arnstein & Lehr LLP, *of Counsel*), complains of Defendant, International Home Fashions, Inc. (hereinafter "IHF"), as follows:

### FIRST CLAIM FOR RELIEF
(Breach of Defective/Non-Conforming Agreement)

### PARTIES

1.    Kmart Corporation is a corporation organized and existing under the laws of Michigan with its principal place of business in Illinois. It is a national retailer.

2.    International Home Fashions, Inc. is a corporation organized and existing under the laws of North Carolina with its principal place of business in North Carolina. It is an importer of various consumer products for the home and sells such goods to retailers.


EXHIBIT A

## JURISDICTION

3. Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Jurisdiction in this Court exists under 28 U.S.C. § 1332. Venue in this District is proper under 28 U.S.C. § 1391(a)(2).

## FACTS

5. Starting in 2006 and for a period of time thereafter, Kmart and IHF entered into a series of purchase orders for the sale by IHF to Kmart of goods, specifically electric blankets, throws, and pads.

6. In or about May of 2006, as a condition to the issuance of said purchase orders, IHF and Kmart entered into a "Defective/Non-Conforming Agreement" (the "Agreement"), which, among other things, afforded Kmart the right to return any unsuitable, defective or non-conforming merchandise for cost, inbound freight if paid by Kmart, outbound freight, and a 10% handling charge. A copy of the Agreement is attached as "Exhibit A," along with the "Purchase Order Terms and Conditions" to which the Agreement refers, which are attached as "Exhibit B."

7. Pursuant to the purchase orders, and subject to the Agreement, Kmart purchased and IHF sold to Kmart an assortment of electric throws, blankets, and mattress pads, for which Kmart paid IHF. Kmart fully performed under the Agreement and otherwise.

8. The electric throws and blankets that IHF sold Kmart were unsuitable and were not merchantable.

9. Kmart demanded that IHF accept return of said electric blankets and throws and demanded that IHF reimburse it, as agreed, for the cost thereof as well as the costs associated with the return of the unsuitable, non-conforming, and unmerchantable goods.

10. Despite said demand, IHF failed and refused to accept most of the blankets and throws and continues to fail and refuse to pay Kmart the amount due Kmart under the Agreement.

11. As a result of IHF's breach of the Agreement, Kmart was damaged and is owed $1,096,815 in reimbursement for the cost of said unsuitable, non-conforming blankets and throws and any inbound freight paid by Kmart, outbound freight and a 10% handling charge.

Wherefore, Kmart, is entitled to judgment against IHF in the amount of $1,096,815, plus any inbound freight paid by Kmart, outbound freight and a 10% handling charge, prejudgment interest, lost profits, the cost of storing goods IHF has refused to accept, and its costs of suit, as well as such other relief as the Court deems just.

**SECOND CLAIM FOR RELIEF**
(Breach of Contract for Nonconforming Goods under the UCC)

1-11. Plaintiff repeats and realleges paragraphs 1-11, inclusive, of Count I, as paragraphs 1-11, inclusive of this Count II.

12. IHF's sale to Kmart of electric throws, blankets and mattress pads was a sale of goods, subject to the provisions of the Illinois Uniform Commercial Code (hereinafter "the UCC").

13. IHF is a merchant in the type of goods sold to Kmart, namely electric throws, blankets, and mattress pads.

14. The electric throws and blankets were unsuitable, unmerchantable, or non-conforming goods.

15. The sale and provision by IHF of unsuitable, unmerchantable or non-conforming goods is a breach of the contracts for sale of the goods and the Agreement and the UCC requirement to provide suitable, merchantable, conforming goods.

16. Kmart has demanded that IHF accept the return of all said blankets and throws and demanded IHF pay the cost of the unsuitable or non-conforming goods, along with other damages stemming from the nonconformity of said goods, including any freight and handling to return them to IHF, but IHF has refused to pay Kmart said amounts.

17. IHF's breach of contract and breach of the UCC provision requiring suitable, merchantable, conforming goods damaged Kmart in the amount of, at least, the cost of all returned, unsuitable or non-conforming products, lost profits and any cost of freight and handling in returning those products, an exact amount to be proven at trial.

18. Kmart gave timely notice to IHF of its breach of contract, but IHF has refused to pay Kmart the damages IHF has caused.

Wherefore, Kmart, is entitled to judgment against IHF in the amount of $1,096.815, plus any inbound freight paid by Kmart, outbound freight and a 10% handling charge, prejudgment

interest, lost profits, the cost of storage of returns IHF has refused to accept and its costs of suit, as well as such other relief as the Court deems just.

### THIRD CLAIM FOR RELIEF
(Breach of the Implied Warranty of Merchantability)

1-11. Plaintiff repeats and realleges paragraphs 1-11, inclusive, of Count I, as paragraphs 1-11, inclusive of this Count III.

12. IHF had agreed to provide products that were of good quality and workmanship, and free from defects.

13. The electric throws and blankets were not merchantable.

14. The electric throws and blankets were not of good quality and workmanship and were not merchantable.

15. As a result of IHF's failure to provide a product that was of good quality and workmanship and failure to provide a product that was merchantable, Kmart suffered damages.

16. As a result of the above described breaches by IHF, Kmart incurred damage in the amount of, at least, the cost of all unsuitable or non-conforming products, i.e., $1,096,815, lost profits and the cost of freight and handling in returning those products, an exact amount to be proven at trial.

17. Kmart performed all things required of it under its purchase orders with IHF and otherwise.

18. Kmart gave timely notice to IHF of its breach of the implied warranty of merchantability, but IHF has refused to pay the damages it has caused.

Wherefore, Kmart, is entitled to judgment against IHF in the amount of $1,096,815, plus any inbound freight paid by Kmart, outbound freight and a 10% handling charge, prejudgment interest, lost profits, its storage costs for goods IHF has refused to accept, and its costs of suit, as well as such other relief as the Court deems just.

**DATED: February 8, 2008**

Respectfully submitted,

KMART CORPORATION

By: One of Its Attorneys

Mark E. Enright
ARDC No. 6185357
Jason B. Hirsh
ARDC No. 6283094
Arnstein & Lehr LLP, of Counsel
120 S. Riverside Plaza
Suite 1200
Chicago, Illinois 60606
(312) 876-7100

8015106_2

# EXHIBIT A

Case 1:08-cv-00866   Document 10-2   Filed 03/17/2008   Page 7 of 14

*IMPORTANT VENDOR* *AIR* *Pay Duns 427708*

JUN 0 7 2006

# KMART CORPORATION
## Addendum H -- Defective/Non-Conforming Merchandise Agreement

KEYED-IN BY OMAR LOPEZ



Return To:
Kmart Corporation
Attn: Vendor Administration
3100 W Big Beaver Rd
Troy MI 48084-3163

**INTERNAL USE ONLY**
☐ New Vendor ☐ Private Label
☐ Modified Disposition ☐ Scan Based Direct to Store
☐ Category range: ____ to ____ ☐ Scan Based DC
☐ Note:

Vendor Name: _International Home Fashion, Inc._ Pay Duns: _427708_ Dept. No.(s): _70_

Vendor agrees to the following procedures for the disposition of Defective or Non-Conforming Merchandise, as such term is defined in the Master Vendor Agreement ("Agreement") or the Purchase Order Terms and Conditions ("POTC"), and reimbursement to Kmart in connection therewith.

This Defective/Non-Conforming Merchandise Agreement only applies to the Department(s) listed above. Disposition for Defective or Non-Conforming Merchandise in other department(s) shall be as specified in separate Defective/Non-Conforming Agreement(s) or, if none, as specified in the Agreement or POTC.

(Please check the applicable provisions and fill-in applicable blanks.)
☒ **I. Defective Merchandise for any Cost Amount – Return (must complete page 2)**
  Kmart will automatically return the Merchandise to the address provided by Vendor. Kmart will charge Vendor for the cost of the Merchandise, inbound (if paid by Kmart) and outbound freight, plus 10% handling charge.
☐ **II. Defective Merchandise for any Cost Amount – Destroy/Salvage/Donate**
  Kmart will destroy/salvage/donate the Merchandise. Kmart will charge Vendor for the cost of the Merchandise, inbound freight (if paid by Kmart), plus
  ☐ 10% handling charge if Vendor requires destruction of the Merchandise, OR
  ☐ 7½% handling charge if Vendor agrees that Kmart may in lieu of destroying such Merchandise dispose of same as it deems appropriate, including donation to charity, resale as salvage, etc.

---
**DO NOT COMPLETE WITHOUT PRIOR APPROVAL FROM KMART**
☐ **III. In Lieu of Kmart Returning or Destroying Defective Merchandise (must complete VATS)** for credit or refund of the cost price, Vendor agrees to pay Kmart an off-invoice allowance of ____% ("Allowance"); and Kmart shall have sole discretion to dispose of said Merchandise. (This option must be approved by the appropriate Kmart Finance Divisional Vice President and the General Merchandise Manager, and must be documented in a signed Vendor Allowance Tracking System agreement which must accompany this agreement upon its submission to Kmart). The Allowance shall be deducted from each remittance to Vendor by Kmart; provided, however, in the event that the total cost price and associated processing costs of Defective Merchandise incurred by Kmart in any quarter exceeds the Allowance actually paid to Kmart, Vendor agrees to pay such excess to Kmart; provided, further, that all recalled Merchandise shall be handled pursuant to Provision I and not as an Allowance, unless otherwise agreed to by Kmart.

---

**VENDORS WITH LOCAL REPS ONLY** (This option will ONLY be accepted if Vendor is servicing in store.)
☐ **IV.** Disposition of Merchandise will be provided by Vendor's Local Representatives in the Kmart store:
  ☐ **Return:** Kmart will charge Vendor for the cost of the Merchandise, inbound (if paid by Kmart) and outbound freight, plus 10% handling charge.
  ☐ **Destroy:** Kmart will charge Vendor for the cost of the Merchandise, inbound freight (if paid by Kmart), plus:
    ☐ 10% handling charge if Vendor requires destruction of the Merchandise, OR
    ☐ 7½% handling charge if Vendor agrees that Kmart may in lieu of destroying such Merchandise dispose of same as it deems appropriate, including donation to charity, resale as salvage, closeout, etc.
  ☐ **Exchange:** Vendor will service the Kmart store, and exchange damaged/expired merchandise with conforming merchandise.

Confidential and Proprietary      Page 1 of 3      Kmart.D/N-C.1.20.05


EXHIBIT A

Copy got from MARIA MATOS
Acute Data: turned on 6/07/06
Acute Dept OK on 6/07/06

# KMART CORPORATION
## Addendum H – Defective/Non-Conforming Merchandise Agreement



### Return Address Form (Complete only for Return Disposition – Option I)

**Return to:**
Kmart Corporation
3100 West Big Beaver Road
Troy, MI 48084-3163
Attention: _DAN MYERS_ (Kmart Buyer)

Please complete this form for each return address your company has for returned merchandise.

Vendor Name: _INTERNATIONAL HOME FASHIONS_
Contact: _TOM GIBBS_
Telephone: _(864) 647-8800_ Fax: _(864) 647-8899_
Address: _2333-B SANDIFER BLVD, WESTMINSTER S.C. 29693_
City: _WESTMINSTER, S.C._
State: _S.C._ 8-Digit Zip Code: _29693_ Country: _USA_

The above address is for all merchandise purchased from your company  Yes [X]  No [ ]

If No, specify item(s) _____

**The above return address is for:**

[X] Both defective and non-defective merchandise

[ ] Defective merchandise only        [ ] Non-defective merchandise

[ ] All Kmart Stores

[ ] Kmart Stores in the following states: _____

[ ] All Return Goods Centers

  [ ] RGC 8359 Bensenville, IL   [ ] RGC 8360 Atlanta, GA   [ ] RGC 8361 Fogelsville, PA   [ ] RGC 8362 Sparks, NV

MAY 04 2006 12:49PM HP LASERJET 3200    p.3

# KMART CORPORATION
## Addendum H – Defective/Non-Conforming Merchandise Agreement



Vendor acknowledges and agrees with the disposition indicated above

This Agreement shall take effect when executed by Vendor; provided, however, Provision III shall take effect only if Kmart's appropriate Finance Divisional Vice President and General Merchandise Manager approve the percentage allowance by signing below.

Notwithstanding anything herein to the contrary, Kmart reserves the unconditional right to return Merchandise, under Provision I, which Kmart determines to constitute or contain a hazardous material under any federal or state law, rule or regulation; further, if Kmart is unable or elects not to return such Merchandise in its current state to Vendor, Kmart will also charge Vendor for the actual costs incurred in disposing of same; and further, if Vendor request any manner, mode or form of return of such Merchandise not customarily provided by Kmart, Kmart will also charge Vendor for any actual costs incurred in connection therewith.

This Agreement shall be a part of and shall be incorporated into the Master Vendor Agreement, and all purchase orders issued to Vendor respective of each applicable department referenced above.

Agreement Accepted By:
Vendor:

__INTERNATIONAL HOME FASHIONS__
Vendor Name

_J Tedd Smith_
Officer's Signature

__J. TEDD SMITH      E.V.P. Sales / MKTING__
Officer's Name/Title (Chairman, President or Vice President Only)

Kmart:

_[signature]_
Kmart Buyer's Signature

__48 - Soft Home__
Kmart Department Number or Name

__5-5-06__
Date

Provision III Approval (if applicable)

_____    _____
Kmart Finance Divisional Vice President    Kmart General Merchandise Manager

**INTERNAL USE ONLY**
☐ Return Logistics Signature Not Required
☐ Return Logistics Signature Required

Kmart Return Logistics

Confidential and Proprietary        Page 3 of 3        Kmart D/N-C.1.20.05

# EXHIBIT B



## KMART CORPORATION
## Purchase Order Terms and Conditions -- Import

As used herein, "Vendor" is the entity identified as the vendor at the bottom of this Agreement, and "Buyer" is Kmart Corporation, 3100 West Big Beaver Road, Troy, Michigan 48084-3163 and/or a subsidiary or affiliate of Kmart Corporation, for example, Kmart of Michigan, Inc. Vendor and Buyer agree, to the fullest extent permitted by law, to be bound by all terms and conditions contained and incorporated herein, all of which are a part of each Purchase Order issued to Vendor by Buyer ("Order") and should be carefully read. Any provisions in Vendor's invoices, billing statements, acknowledgment forms or similar documents which are inconsistent with the provisions of an Order are of no force or effect. The cost price set forth in each Order includes the cost of manufacturing, packaging, labeling and shipping, unless otherwise specified in the Order.

1. **Vendor's Acceptance.** Vendor's commencement of or promise of shipment of the Merchandise constitutes Vendor's agreement that it must deliver the Merchandise in accordance with the terms and conditions of the applicable Order. Vendor agrees (a) to all applicable agreements, provisions, procedures and requirements contained in Buyer's "New Vendor Packet", and (b) to follow the shipping and invoicing instructions issued by Buyer's International and International Transportation Departments, which instructions are incorporated by reference into the applicable Order.

2. **Vendor's Representations and Warranties.** Vendor represents and warrants to Buyer, in addition to all warranties implied by law, that each item of merchandise described on the face of an Order (or in an EDI or telephone Order), together with all related packaging and labeling and other material furnished by Vendor ("Merchandise"), must: (a) be free from defects in design, workmanship and/or materials including, without limitation, such defects as could create a hazard to life or property; (b) conform in all respects with all applicable international, federal, state and local laws, orders and regulations, including, without limitation, those regarding (i) country of origin, content, labeling and shrinkage, (ii) safety, (iii) content, (iv) flammability, (v) weights, measures and sizes, (vi) special use, care, handling, cleaning or laundering instructions, or warnings, (vii) processing, manufacturing, labeling, advertising, selling, shipping and invoicing, (viii) registration and declaration of responsibility, and (ix) occupational safety and health; (c) not infringe or encroach upon Buyer's or any third party's personal, contractual or proprietary rights, including, without limitation, patents, trademarks, trade names, copyrights, rights of privacy or trade secrets; (d) conform to all of Buyer's specifications and to all articles shown to Buyer as Merchandise samples; and (e) not be adversely affected by the inability or incapacity of any hardware, software (including embedded software), firmware or system to process accurately date and date-related data from, into and between the twentieth and twenty-first centuries, including the years 1999 and 2000, and leap year calculations. Vendor further represents and warrants that it has ascertained that no child, forced or prison labor is utilized in the manufacture of Merchandise.

3. **Vendor's Indemnification of Buyer.** Vendor agrees to reimburse, indemnify, hold harmless and defend, at Vendor's expense (or to pay any attorney's fees incurred by Buyer), Buyer and its subsidiary and affiliate companies against all damage, loss, expense, claim, liability, fine, settlement or penalty, including, without limitation, claims of infringement of patents, copyrights and trademarks, unfair competition, and bodily injury, property damage or other damage, arising out of (i) any use, possession, consumption or sale of the Merchandise, (ii) any failure of Vendor to provide complete, accurate and acceptable (to U.S. Customs) information and documentation including, without limitation, information and documentation relating to the country of origin and (iii) any failure of Vendor to properly perform an Order. Vendor is not relieved of the forgoing indemnity and related obligations by allegations or any claim of negligence on the part of Buyer; provided, however, Vendor is not liable hereunder to the extent any injury or damage is finally judicially determined to have been proximately caused by the sole negligence of Buyer. Vendor must obtain adequate insurance to cover such liability under each Order and must provide copies of the applicable certificate(s) of insurance annually to Buyer's International Department at the above address.

4. **Defective or Non-Conforming Merchandise.** If any Merchandise is defective, unsuitable, does not conform to all terms hereof and of the Order and all warranties implied by law, then Buyer may, at its option, (i) return it to Vendor for full credit or refund of the purchase price or repair it at Vendor's expense, and may charge Vendor such price or expense and the cost of any incurred inbound and outbound freight, or (ii) refuse to accept any or all deliveries of Merchandise ordered, but any acceptance by Buyer of any such singular shipment or installment shipment is not a waiver or limitation of any of Buyer's rights to refuse any future shipments or of any other rights or remedies (whether or not Buyer notifies Vendor of its demand for strict compliance with respect to future shipment installments). Acceptance of Merchandise by Buyer, before or after inspection, does not release or discharge Vendor from any liability for damages or from any other remedy of Buyer for Vendor's breach of any promise or warranty, expressed or implied. Buyer is under no duty to inspect any Merchandise before resale thereof, and resale, repackaging or repacking for the purpose of resale does not constitute a waiver of, or otherwise limit, any of Buyer's rights resulting from defective or non-conforming Merchandise.

5. **Buyer's Right to Cancel.** Buyer may, without notice and in addition to all other rights and remedies, cancel, terminate and/or rescind all or part of an Order (and other affected or related Orders) in the event Vendor breaches or fails to perform any of its obligations in any material respect, Vendor becomes insolvent or Vendor ceases its



EXHIBIT B

operation. Time is of the essence to each Order, and Vendor's failure to meet any delivery date constitutes a material breach of the Order. Without limiting the generality of the foregoing, any and all Orders may, at Buyer's option, be cancelled if the Merchandise ordered is not covered by a full set of "Clean" "On Board" Ocean Bills of Lading and Buyer's Inspection Certificate dated on or before the shipping date specified on the face of the Order. Any such cancellation is without prejudice to all other rights and remedies accruing to Buyer by reason of Vendor's breach, unless a written extension of shipping date(s) was previously granted in writing to Vendor by Buyer.

6. **Special Features.** All Merchandise designs, patents, trademarks and trade names which are supplied by Buyer to Vendor or which are distinctive of Buyer's private label merchandise ("Special Features") are the property of Buyer and must be used by Vendor only for Buyer. Buyer may use the Special Features on or with respect to goods manufactured by others and obtain legal protection for the Special Features including, without limitation, patents, patent designs, copyrights and trademarks. Merchandise with Special Features which is not delivered to Buyer for any reason must not be sold or transferred to any third party without written authorization of Buyer and unless and until all labels, tags, packaging and markings identifying the Merchandise to Buyer have been removed.

7. **Sums Payable.** Any sums payable to Vendor are subject to all claims and defenses of Buyer, whether arising from this or any other transaction. Buyer is not liable to Vendor for any interest or late charges.

8. **Choice of Law and Jurisdiction.** EACH ORDER, AND ALL OTHER ASPECTS OF THE BUSINESS RELATIONSHIP BETWEEN BUYER AND VENDOR, MUST BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN. VENDOR AGREES, WITH RESPECT TO ANY LITIGATION WHICH RELATES TO ANY ORDER OR WHICH OTHERWISE ARISES DIRECTLY OR INDIRECTLY OUT OF OR IN CONNECTION WITH SAID BUSINESS RELATIONSHIP OR ANY TRANSACTION OF ANY NATURE BETWEEN BUYER AND VENDOR, TO COMMENCE SAME: (I) EXCLUSIVELY IN (AND VENDOR HEREBY CONSENTS TO THE JURISDICTION OF) THE UNITED STATES DISTRICT COURT IN DETROIT, MICHIGAN AND (II) WITHIN 18 MONTHS FROM THE DATE OF BUYER'S LAST ORDER TO VENDOR OR THE PERIOD PRESCRIBED BY THE APPLICABLE STATUTE OF LIMITATIONS WHICHEVER IS SOONER.

9. **Miscellaneous.** (a) All rights granted to Buyer hereunder are in addition to and not in lieu of Buyer's rights arising by operation of law. (b) Any provisions of a hard copy Order which are typewritten or handwritten by Buyer supersede any contrary or inconsistent printed provisions therein. (c) No modification of terms of an Order including, without limitation, any price increase, is valid without the written authorization of Buyer. (d) Should any of the provisions of an Order be declared by a court of competent jurisdiction to be invalid, such decision does not affect the validity of any remaining provisions. (e) All documents prepared in connection with an Order must be written in the English language and in U.S. currency figures. (f) Vendor agrees to prepare and produce all documents which are necessary for the Merchandise to clear U.S. Customs and which are otherwise required by applicable laws or regulations, the Letter of Credit and instructions set forth on the face hereof.

10. **Assignment.** (a) Except for the right to receive payment, Vendor hereby assigns all of its rights (expressed and implied) under any purchase order Vendor issues to a manufacturer for Merchandise or any component thereof covered by each order including, without limitation, rights of warranty and indemnification, and Vendor must cooperate fully with Buyer in pursuing such rights. Buyer does not assume, nor may this provision be construed to impose, any obligation on the part of Buyer to a manufacturer in connection with the Merchandise. This partial assignment does not limit Buyer's rights and remedies elsewhere under each Order. (b) Neither an Order nor any right, duty or obligation thereunder is assignable by Vendor without the prior written consent of Buyer, to be given or not at Buyer's sole option. Any prohibited assignment is void. Buyer may assign an Order or any right, duty or obligation thereunder to a subsidiary or affiliate.

11. **Shipping Instructions.** All shipping cartons are to be marked and packed in accordance with Buyer's International Department Instructions set forth in Buyer's "New Vendor Packet", which are part of and are incorporated in each Order by this reference. In addition, Vendor must follow any shipping instructions issued directly to Vendor by Buyer's International Department.

12. **Country of Origin / Child Labor.** Without in any way limiting the generality of the foregoing provisions or Buyer's other rights and remedies arising thereunder, Vendor's shipment of any Merchandise that (i) misstates the true country of origin or (ii) is made in whole or in part by child or prison labor constitutes a material breach of the applicable Order, and Vendor must immediately pay to Buyer an amount equal to the total F.O.B.-factory cost of the Merchandise plus all freight, import/export charges and other costs incurred for the shipment or return (or destruction, at Buyer's election) of such Merchandise.

13. **Merchandise Testing.** Merchandise may, at Buyer's option, be subject to domestic or overseas testing. Vendor agrees to pay for all fees and costs associated with such testing (which fees and costs are set forth in Buyer's current Quality Assurance Manual or other documentation provided to Vendor). The testing of Vendor's Merchandise by or on behalf of Buyer is not a substitute for Vendor's own testing and other quality assurance related obligations in connection with its sale of Merchandise to Buyer, and such testing does not limit Buyer's rights, or diminish or remove any of Vendor's responsibilities, hereunder including, without limitation, those relating to warranty and indemnification under Paragraphs 2 and 3 above.

14. **Buyer Information/Orders.** Buyer may, at its option, provide Vendor with certain confidential or proprietary information relating to Buyer's purchase and/or sale of Vendor's Merchandise. Vendor acknowledges that such information, together with any other information of or pertaining to Buyer provided to Vendor by Buyer or learned by Vendor as a consequence of the business relationship between Buyer and Vendor (the "Buyer Information"), is provided and received in confidence, and Vendor must at all times preserve and protect the confidentiality thereof. Vendor agrees to take all necessary steps to ensure that the Buyer Information is not disclosed to, or used by, any person, association or entity, except Vendor's own employees having a need to know. BUYER MAKES NO WARRANTY WITH RESPECT TO THE BUYER INFORMATION OR THE ACCURACY OR COMPLETENESS THEREOF, AND IS PROVIDING SAME ON AN "AS IS" BASIS. ALL IMPLIED WARRANTIES WITH RESPECT TO THE BUYER INFORMATION, INCLUDING THOSE OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED. Vendor acknowledges and agrees that any sales forecasts, quantity purchase estimates or similar projections received from Buyer are not purchase commitments of Buyer, but rather represent estimates for planning purposes only, and that the Buyer has no obligation to purchase or otherwise compensate Vendor for any of Vendor's finished products, or unfinished raw materials, not covered by an Order.

15. **Compliance.** Vendor herby confirms that they are complying with the security measures outlined by U.S. Customs on the website:
http://www.customs.ustreas.gov/xp/cgov/import/commercial_enforcement/ctpat/foreign_manuf/security_recommendations.xml and that these rules apply to all sub-contracting work that is performed as well. Vendor also confirms they are complying with the "Minimum Security Guidelines for Manufacturer's and Warehousemen" found on the Kmart vendor website.

16. **Title.** Unless Vendor can produce a written agreement signed by an authorized Kmart representative to the contrary, title to the Merchandise will not pass to Kmart until delivery (ETA/On Pier) to the designated pier in the United States (before U.S. Customs), notwithstanding the fact that Kmart may arrange for transportation and insurance in its own name. Vendor retains the risk of loss and damage to the Merchandise and will indemnify Kmart to the extent Kmart is unable to recover fully from the carriers. Vendor acknowledges that Kmart is permitted to choose all ocean and insurance carriers. To the extent there is any inconsistency or conflict between this section 16 and the F.O.B. point indicated on the face of any order or any other document, this section 16 will govern and control.

---

Legal Registered Name of Vendor

Address     City     State    Zip    Country

Vendor Officer Signature (Chairman, President or Vice President only)

Print Name     Title     Date of Execution