IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KMART CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 866 |
| v. | ) | |
| | ) | **Judge Dow** |
| INTERNATIONAL HOME FASHIONS, INC., | ) | **Magistrate Judge Cole** |
| | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES

International Home Fashions, Inc. ("IHF"), for its answer and affirmative defenses to Plaintiff's complaint states as follows:

### FIRST CLAIM FOR RELIEF
(Breach of Defective/Non-Conforming Agreement)

### PARTIES

1.     Kmart Corporation is a corporation organized and existing under the laws of Michigan with its principal place of business in Illinois. It is a national retailer.

**ANSWER:**   IHF admits that Kmart is a national retailer. IHF lacks sufficient knowledge to either admit nor deny the remaining allegations set forth in paragraph 1.

\*            \*            \*

2.     International Home Fashions, Inc. is a corporation organized and existing under the laws of North Carolina with its principal place of business in North Carolina. It is an importer of various consumer products for the home and sells such goods to retailers.

**ANSWER:**   IHF admits the allegations set forth in paragraph 2.

\*            \*            \*

### JURISDICTION

3.     Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:**   IHF admits the allegations set forth in paragraph 3.

\*              \*              \*

4.      Jurisdiction in this Court exists under 28 U.S.C. § 1332. Venue in this District is proper under 28 U.S.C. § 1391(a)(2).

**ANSWER:**   IHF admits the allegations set forth in paragraph 4.

\*              \*              \*

### FACTS

5.      Starting in 2006 and for a period of time thereafter, Kmart and IHF entered into a series of purchase orders for the sale by IHF to Kmart of goods, specifically electric blankets, throws, and pads.

**ANSWER:**   IHF admits the allegations set forth in paragraph 5.

\*              \*              \*

6.      In or about May of 2006, as a condition to the issuance of said purchase orders, IHF and Kmart entered into a "Defective/Non-Conforming Agreement" (the "Agreement"), which, among other things, afforded Kmart the right to return any unsuitable, defective or non-conforming merchandise for cost, inbound freight if paid by Kmart, outbound freight, and a 10% handling charge. A copy of the Agreement is attached as "Exhibit A," along with the "Purchase Order Terms and Conditions" to which the Agreement refers, which are attached as "Exhibit B."

**ANSWER:**   IHF admits that it entered into the Agreement, that the documents attached as Exhibit A and Exhibit B purport to be copies the Agreement and the Purchase Order Terms and Conditions, respectively, and such documents speak for themselves. Further answering, IHF denies all remaining allegations set forth in paragraph 6.

\*              \*              \*

7.      Pursuant to the purchase orders, and subject to the Agreement, Kmart purchased and IHF sold to Kmart an assortment of electric throws, blankets, and mattress pads, for which Kmart paid IHF. Kmart fully performed under the Agreement and otherwise.

**ANSWER:** IHF admits that Kmart purchased and IHF sold to Kmart an assortment of electric throws, blankets, and mattress pads, for which Kmart paid IHF. Further answering, IHF denies the remaining allegations set forth in paragraph 7.

\*             \*             \*

8. The electric throws and blankets that IHF sold Kmart were unsuitable and were not merchantable.

**ANSWER:** IHF denies the allegations set forth in paragraph 8.

\*             \*             \*

9. Kmart demanded that IHF accept return of said electric blankets and throws and demanded that IHF reimburse it, as agreed, for the cost thereof as well as the costs associated with the return of the unsuitable, non-conforming, and unmerchantable goods.

**ANSWER:** IHF denies the allegations set forth in paragraph 9.

\*             \*             \*

10. Despite said demand, IHF failed and refused to accept most of the blankets and throws and continues to fail and refuse to pay Kmart the amount due Kmart under the Agreement.

**ANSWER:** IHF denies the allegations set forth in paragraph 10.

\*             \*             \*

11. As a result of IHF's breach of the Agreement, Kmart was damaged and is owed $1,096,815 in reimbursement for the cost of said unsuitable, non-conforming blankets and throws and any inbound freight paid by Kmart, outbound freight and a 10% handling charge.

**ANSWER:** IHF denies the allegation set forth in paragraph 11.

\*             \*             \*

### SECOND CLAIM FOR RELIEF
(Breach of Contract for Nonconforming Goods under the UCC)

1-11. Plaintiff repeats and realleges paragraphs 1-11, inclusive, of Count I, as paragraphs 1-11, inclusive of this Count II.

**ANSWER:** IHF repeats and realleges its answers to paragraphs 1-11, inclusive, of Count I, its answers to paragraphs 1-11, inclusive of this Count II.

\*         \*         \*

12. IHF's sale to Kmart of electric throws, blankets and mattress pads was a sale of goods, subject to the provisions of the Illinois Uniform Commercial Code (hereinafter "the UCC").

**ANSWER:** IHF admits the allegations set forth in paragraph 12.

\*         \*         \*

13. IHF is a merchant in the type of goods sold to Kmart, namely electric throws, blankets, and mattress pads.

**ANSWER:** IHF admits the allegations set forth in paragraph 13.

\*         \*         \*

14. The electric throws and blankets were unsuitable, unmerchantable, or non-conforming goods.

**ANSWER:** IHF admits that a limited batch of electric blankets were recalled by IHF as were certain electric throws and that IHF requested that Kmart return those items IHF. Except for those particular goods, IHF denies the allegations set forth in paragraph 14.

\*         \*         \*

15. The sale and provision by IHF of unsuitable, unmerchantable or non-conforming goods is a breach of the contracts for sale of the goods and the Agreement and the UCC requirement to provide suitable, merchantable, conforming goods.

**ANSWER:** IHF admits that the sale of unsuitable, unmerchantable or non-conforming goods by IHF to Kmart would be a breach of the contract for the sale of goods but denies that all of the goods IHF sold to Kmart were unsuitable, unmerchantable or non-conforming goods. Further answering, IHF makes no answer as to whether the sale of unsuitable, unmerchantable or

non-conforming goods is a breach of a UCC requirement as such allegation calls for a legal conclusion and no answer is required.

\*               \*               \*

16.     Kmart has demanded that IHF accept the return of all said blankets and throws and demanded IHF pay the cost of the unsuitable or non-conforming goods, along with other damages stemming from the nonconformity of said goods, including any freight and handling to return them to IHF, but IHF has refused to pay Kmart said amounts.

**ANSWER:**   IHF admits that Kmart has made demand upon it but, further answering, IHF denies that Kmart is entitled to the relief it has demanded.

\*               \*               \*

17.     IHF's breach of contract and breach of the Dec provision requiring suitable, merchantable, conforming goods damaged Kmart in the amount of, at least, the cost of all returned, unsuitable or non-conforming products, lost profits and any cost of freight and handling in returning those products, an exact amount to be proven at trial.

**ANSWER:**   IHF denies the allegations set forth in paragraph 17.

\*               \*               \*

18.     Kmart gave timely notice to IHF of its breach of contract, but IHF has refused to pay Kmart the damages IHF has caused.

**ANSWER:**   IHF denies the allegations set forth in paragraph 18.

\*               \*               \*

**THIRD CLAIM FOR RELIEF**
(Breach of the Implied Warranty of Merchantability)

1-11.   Plaintiff repeats and realleges paragraphs 1-11, inclusive, of Count I, as paragraphs 1-11, inclusive of this Count III.

**ANSWER:**   IHF repeats and realleges its answers to paragraphs 1-11, inclusive, of Count I, its answers to paragraphs 1-11, inclusive of this Count III.

\*               \*               \*

5

12. IHF had agreed to provide products that were of good quality and workmanship, and free from defects.

**ANSWER:** IHF admits that in its written agreement with Kmart, it agreed to provide products which were free from defects in workmanship. Further answering, IHF denies the remaining allegations set forth in paragraph 12.

\*            \*            \*

13. The electric throws and blankets were not merchantable.

**ANSWER:** IHF denies the allegations set forth in paragraph 13.

\*            \*            \*

14. The electric throws and blankets were not of good quality and workmanship and were not merchantable.

**ANSWER:** IHF admits that a limited batch of electric blankets were recalled by IHF as were certain electric throws. Except for those particular goods, IHF denies the allegations set forth in paragraph 14.

\*            \*            \*

15. As a result of IHF's failure to provide a product that was of good quality and workmanship and failure to provide a product that was merchantable, Kmart suffered damages.

**ANSWER:** IHF denies the allegations set forth in paragraph 15.

\*            \*            \*

16. As a result of the above described breaches by IHF, Kmart incurred damage in the amount of, at least, the cost of all unsuitable or non-conforming products, i.e., $1,096,815, lost profits and the cost of freight and handling in returning those products, an exact amount to be proven at trial.

**ANSWER:** IHF denies the allegations set forth in paragraph 16.

\*            \*            \*

17.     Kmart performed all things required of it under its purchase orders with IHF and otherwise.

**ANSWER:**   IHF denies the allegations set forth in paragraph 17.

*             *             *

18.     Kmart gave timely notice to IHF of its breach of the implied warranty of merchantability, but IHF has refused to pay the damages it has caused.

**ANSWER:**   IHF denies the allegations set forth in paragraph 18.

*             *             *

## Affirmative Defenses

1.     IHF is a distributor of the Classic Beautyrest Automatic Electric Warming Throws ("Throws").

2.     IHF submitted the Throws to Underwriters Laboratory Inc. ("UL"), an independent product safety certification organization.. The Throws received UL approval on June 28, 2006.

3.     Before the Throws could be sold in Kmart's retail stores, the Throws were tested by Sears Holdings Global Sourcing Laboratory ("Sears Lab").  Sears Lab approved by the Throws on July 6, 2006.

4.     The care instructions which accompanied the Throw advised consumers not to bunch, fold or tuck the Throws.  Due to consumers difficulty in adhering to these instructions and some reports of some of the Throws overheating as a result of consumers bunching, folding or tucking the Throws, in August 2007, IHF voluntarily recalled the Throws.

5.     IHF advised Kmart of the voluntary recall.

6.     At no time did IHF recall the mattress pads or blankets it sold to Kmart.

7. Prior to the time of the voluntary recall, Kmart had less than 6,000 Throws in its inventory.

8. Kmart returned to IHF appproximately 3,000 Throws.

9. At the same time, Kmart also returned to IHF approximately 13,000 blankets and mattress pads which IHF had previously sold to Kmart. These blankets and mattress pads were not defective.

10. Kmart also sent to IHF approximately 200 products which were not merchandise IHF sold to Kmart, including non-electric products which were inside electric blanket packaging.

11. Kmart affixed a green sticker to the packaging of each item returned. As a result, IHF has had to repackage the non-defective items.

\*      \*      \*

### First Affirmative Defense - Laches

1 -11. IHF hereby incorporates paragraphs 1 through 11 of its affirmative defenses as and for paragraphs 1 through 11 of its First Affirmative Defense.

12. Kmart claims that the blankets and mattress pads are defective.

13. Kmart failed to notify IHF within a reasonable time after discovery of the alleged breach that many of the blankets and mattress pads it is seeking to return are defective.

\*      \*      \*

### Second Affirmative Defense - Unclean Hands

1 -11. IHF hereby incorporates paragraphs 1 through 11 of its affirmative defenses as and for paragraphs 1 through 11 of its Second Affirmative Defense.

12. Kmart used the recall of Throws as a means to return other non-defective merchandise which had been previously accepted by Kmart.

13.     Kmart has unclean hands.

*          *          *

### Third Affirmative Defense - Setoff

1 -11.     IHF hereby incorporates paragraphs 1 through 11 of its affirmative defenses as and for paragraphs 1 through 11 of its Third Affirmative Defense.

12.     IHF has already paid payment to Kmart for certain of the recalled Throws.

13.     Kmart has also received money from the sale of merchandise from IHF which it claims it returned but did not return.

14.     IHF has incurred costs in repackaging its non-defective merchandise as a result of the green stickers that Kmart affixed to IHF's merchandise thereby permanently altering the packaging.

15.     IHF is entitled to set off these sums against the amounts claimed to be due by Kmart.

*          *          *

### Fourth Affirmative Defense - Estoppel

1 -11.     IHF hereby incorporates paragraphs 1 through 11 of its affirmative defenses as and for paragraphs 1 through 11 of its Fourth Affirmative Defense.

12.     Kmart failed to notify IHF within a reasonable time after discovery of the alleged breach that many of the blankets and mattress pads it is seeking to return are defective.

13.     Kmart is estopped from declaring the blankets and mattress pads to be defective.

*          *          *

**Jury Demand**

IHF hereby demands a jury on all triable issues.

WHEREFORE, Defendant International Home Fashions, Inc., respectfully requests that this Court dismiss Kmart Corporation's complaint against Defendant with prejudice and for such other and further relief as this Court deems just.


**INTERNATIONAL HOME FASHIONS, INC.**


By: /s/ Carrie A. Dolan
    One of Its Attorneys


Carrie A. Dolan (ARDC No. 6224808)
Cornelius P. Brown (ARDC No. 0312355)
Cohon Raizes & Regal LLP (90192)
208 S. LaSalle Street, Suite1860
Chicago, Illinois 60604
312-726-2252 (office)
312-726-0609 (fax)

Date: April 25, 2008